IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

KIM OLSON,

      *Plaintiff*,                                      CIVIL ACTION FILE NO.

   v.

CHUCK'S FISH ATHENS, LLC., and               JURY DEMAND
MITCHELL DANE HENDERSON,

      *Defendants*.

## COMPLAINT

**NOW COMES** Kim Olson (hereinafter "Plaintiff") and asserts this Complaint against Defendants Chuck's Fish Athens, LLC (hereinafter "Chuck's, LLC") and Mitchell Dane Henderson (hereinafter "Henderson") (hereinafter collectively "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq*. (hereinafter "FLSA" or "the Act"), civil damages for fraudulent filing of tax information returns, 26 U.S.C. §7434, and Georgia state law.  Plaintiff states more fully as follows:

<u>INTRODUCTION</u>

1.

Plaintiff worked for Defendants within three (3) years preceding the filing of this Complaint.  Defendants failed and willfully refused to pay Plaintiff minimum wages equal to or exceeding the amount required under the FLSA, 29 U.S.C. §206.

Defendants failed and willfully refused to pay Plaintiff overtime wages equal to one and one-half times the Plaintiff's "regular rate" as required by the FLSA, 29 U.S.C. §207. Plaintiff seeks her unpaid wages and overtime for three (3) years preceding the filing of this Complaint (hereinafter "the Relevant Period"), liquidated damages, and her attorneys' fees and costs of litigation under the Act.

2.

More specifically, Defendants violated the Act in several specific ways. First, Defendants tacitly encouraged, and were aware of, Plaintiff's working off-the-clock due to the excessive side-work required of servers. Second, Defendants impermissibly paid service staff the tipped minimum wage for (a) improper side-work tasks, (b) excessive side-work tasks (greater than twenty percent (20%) of each work shift) and (c) non-contemporaneous side-work tasks. Third, Defendants violated the tip pool regulations in that (a) managers participated in and received money from the tip pool, (b) back-of-house employees illegally received tips from service staff, (c) no accurate description of the tip pool was ever provided to the service staff, (d) accurate records of gross tips received and the tip pool distribution were never kept and/or provided to the service staff, (e) retained credit card fees for the cost of credit card processing fees in excess of the rate paid by Defendants, and (f) service staff was required to tip-out more than fifteen percent

(15%) of their actual tips received. <u>Fourth</u>, Defendants have failed to keep and maintain the proper records required under the Act.

3.

Further, Defendants committed fraud under Georgia law. O.C.G.A. §51-6-2(b).  Defendants fraudulently inflated the dollar amount of cash tips allegedly paid to Plaintiff, claiming far higher amounts than were actually paid. Falsifying the cash tips paid to Plaintiff caused her to pay higher state and federal taxes, and, on information and belief, allowed Defendants to claim higher payroll expenses than they actually incurred thereby allowing Defendants to hide income.  The false cash tip amounts were (1) untrue, (2) known by Defendants to be untrue when stated by Defendants, (3) relied upon by Plaintiff in filing her state and federal tax returns (and used in calculating Plaintiff's FICA contributions), and (4) caused Plaintiff to pay more state and federal income taxes and FICA contributions than she would otherwise have been legally required to pay to her detriment.   Plaintiff seeks, damages equal to the excess FICA, state and federal taxes triggered by Defendants' excess, untrue and fraudulently reported cash tip amounts, and punitive damages.

Finally, Plaintiff additionally asserts a claim against Chuck's, LLC, for violations of 26 U.S.C. §7434 (civil damages for fraudulent filing of tax information returns) to recover no less than $5,000.00 per fraudulent filing or her

3

actual damages, whichever is greater, and her costs of litigation, including reasonable attorney's fees.

## JURISDICTION

### 4.

Plaintiff brings this action under the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq*. This Court has original jurisdiction pursuant to 29 U.S.C. §216(b), and 28 U.S.C. §1331, §1132(a)(1)(B), and §1337. The Court has pendent jurisdiction over Plaintiff's Georgia state law claims pursuant to 28 U.S.C. §1367.

## VENUE

### 5.

Defendant Chuck's, LLC a Georgia-based corporation with both its corporate office and restaurant at 220 West Broad Street, Athens, Clarke County, Georgia 30677. Chuck's, LLC may be served via its Registered Agent Henderson. Venue for this action properly lies in the Middle District of Georgia, Athens Division, pursuant to 28. U.S.C. §1391(b) and §1391(c)(2), and Local Rule 3.1, and 3.4, M.D. Ga.

*(Continued On the Next Page)*

4

## DEFENDANTS' COVERAGE UNDER THE FLSA

### Sub-Part 1: Chuck's LLC

6.

Chuck's LLC operates a restaurant located at 220 West Broad Street, Athens, Clarke County, Georgia 30677 (hereinafter "the Restaurant").

7.

Chuck's, LLC buys supplies and equipment, including fish, out of the stream of interstate commerce.

8.

Chuck's, LLC utilizes interstate credit/debit card processing in the course of its business.

9.

Chuck's LLC utilizes the interstate banking system in the course of its business.

10.

In calendar year 2019, Chuck's, LLC, had an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

11.

For calendar year 2020, Chuck's, LLC, had an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

12.

For calendar year 2021, Chuck's, LLC, will have an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

13.

Chuck's, LLC, constitutes an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of §3(r), §3(s)(1), §6(a) and §7(a) of the Act, 29 U.S.C. §203(r), §203(s)(1), §206(a) and §207(a), for the years 2019 through 2020.

14.

For the calendar year 2019, Chuck's, LLC, was covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

15.

For the calendar year 2020, Chuck's, LLC, is covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

16.

For the calendar year 2021, Chuck's, LLC, is covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

17.

Chuck's, LLC, is an "employer" in an industry affecting commerce within the meaning of §3(d) of the Act, 29. U.S.C. §203(d).

18.

Chuck's, LLC, was an "employer" of Plaintiff as defined in §3(d) of the Act. 29 U.S.C. §203(d), in 2019 and 2020.

19.

During the relevant time period – 2019 through 2021 – Chuck's, LLC, constituted an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of §3(r), §3(s)(1), §6(a) and §7(a) of the Act.  29 U.S.C. §203(r), §203(s)(1), §206(a) and §207(a).

Sub-Part 2: Owner/Managers as "Employers"

20.

Henderson is an owner and/or shareholder in Chuck's, LLC.

21.

Henderson, along with other individuals, manages the day-to-day operations of Chuck's, LLC.

22.

Defendant Henderson acted and acts directly in the interest of Chuck's, LLC, in relation to Defendant Chuck's, LLC's employees such as Plaintiff.  Thus, Henderson was an "employer" of the Plaintiff within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

FACTS.

Sub-Part 1: Basic Employment Facts.

23.

Plaintiff was employed by Defendants from approximately April 2019 through on or about July 19, 2021.

24.

During the Relevant Period, the Plaintiff was employed by the Defendants as a server and for one shift as a sushi runner.

25.

Chuck's, LLC operates the Restaurant to sell sushi, salads, and seafood in Athens, Georgia.

26.

While the exact hours of operation and hours of food service have varied slightly during the Relevant Period, in general, the dinner shift started at 3:00 PM Monday through Saturday, with employees expected to be at work for the dinner shift at 2:45 PM at the Restaurant.

27.

The Restaurant opened for dinner service in the sushi station area only at 4:00 PM. The Restaurant opened for dinner service in the main dining station and patio at 5:00 PM, and ended at either 10:00 PM (Monday through Thursday) or at 11:00 PM (Friday and Saturday).  Subsequently, some time in 2020 service for the Restaurant shifted to ending at 10:00 PM. The Restaurant is closed on Sundays.

28.

The shift ended when either a server was cut or all side work was completed, all cash drawers counted down, and all employees were released for the night.

29.

While the foregoing paragraphs describe the regular hours of operation, the Plaintiff's actual work hours depended on restaurant volume, job position worked, and the amount of side-work assigned.

30.

Chuck's, LLC, utilized a tip pool as that term is defined under the Act, *see e.g.*, 20 C.F.R. Sub-Part D, 29 C.F.R. §531.54 and 29 U.S.C. §203(m).

31.

Plaintiff was initially paid $2.13 per hour plus tips but Defendants' increased Plaintiff's rate of pay to $5.00 per hour plus tips in or about October 2020.

Sub-Part 2: Impermissible Side-Work Paid at Tipped Wage Rate.

32.

Plaintiff worked off the clock due to the excessive and unrealistic side-work expectations of Chuck's, LLC.  Chuck's, LLC, management was well-aware of the practice.

33.

Chuck's, LLC paid the Plaintiffs the "tipped minimum wage," i.e., $2.13 (or $5.00 per hour), *see* 29 U.S.C. §203(m)(2), for ***all*** hours worked regardless of the tasks performed by the Plaintiff.

34.

Chuck's, LLC required the Plaintiff to perform a wide variety of "side work" tasks.

35.

Plaintiff, who worked the server position of "opener", was required to report and clock in at 2:45 PM for a 3:00 PM start to her shift. Openers were required to perform the following tasks and are not directly related to her tip earning labor. (this list is not exhaustive):

(a) sweep and mop bathrooms, including two available to the public and one for employees only;

(b) vacuum mats and replace mats;

(c) sweep and mop the inside dining area;

(d) sweep and use a leaf blower to clean the outside dining area;

(e) set up the outside dining area, including applying Murphy's wood oil soap to the dining room's wood surfaces, sanitize outside tables, and check and clean seats;

(f) set up all place settings at tables, including napkins, silverware, and glasses;

(g) polish and put away glasses and silverware;

(h) fold napkins;

(i) prepare the servers' station, including making tea, coffee, fill ice, fill water table carafes, set up drink machines, check and fill the dry stock, and prepare guest check postcards;

(j) check the cleanliness of bathrooms;

(k) water the outside plants;

(l) put candles on the tables;

(m)   check the parking area and front sidewalk for cleanliness and sweep as necessary;

(n) empty ashtray in break area when needed;

(o) clean the dish pit, or area in front of the window to the dishwasher's station, including sweeping and mopping the area;

(p) put up cloth napkins; and,

(q) empty liquids from various containers.

36.

After completing the tasks listed above as an opener, the Plaintiff would attend a meeting with other servers and management, in the form of a "line up", in which Plaintiff would review specials, note any missing items, and after other instructions, wait for the availability of diners in the dining room *after* 5:00 PM.

37.

When Plaintiff worked as an "opener," she was generally cut between 8:30 PM and 9:30 PM, after the dinner rush.

38.

The Plaintiff, when working as an "opener", also had to perform certain duties before she could leave at the end of her opening shift. These duties took approximately one (1) hour to perform and are not directly related to her tip earning labor. The Plaintiff would have to perform the following duties before she could leave for the evening after her shift:

(a) take the rubber mats outside to hang up and spray down;

(b) break down the drink machines;

(c) break down the tea and coffee machines;

(d) clean the employee and customer restrooms, including sanitizing toilets and sinks, taking out the trash, restocking toiletries, and cleaning mirrors;

(e) restock the to-go station with chopsticks, sugar, and straws;

(f) take out the trash from the server station and expo stations; and,

(g) polish and put away the glasses and silverware.

39.

Thus, when Plaintiff worked as an opener, she performed non-tipped side work for approximately two (2) hours and fifteen minutes per shift (2:45 PM to 5:00 PM) and performed tipped duties as a server for between approximately three and one-half (3 ½) hours (5:00 PM to 8:30 PM) in a five and three-quarter (5 3/4) hour shift (3:00 to 8:30) to approximately four and one half (4 ½) hours (5:00 PM

13

to 9:30 PM) in a six and three fourth (6 ¾) hour shift, with an additional one (1) hour of closing duties by an opener.

40.

Plaintiff also worked the serving position known as "closer" which required her to report and clock in at various times between approximately 4:30 PM and 6:00 PM, depending on the server's position in the Restaurant for a particular shift. 5:00 Closers were required to, amongst other things, perform the following non-tipped tasks at the end of dinner shift (this list is not exhaustive):

(h) remove settings from the outside dining area, including wiping down tables, stacking chairs, folding, and stacking tables, and spot sweeping;

(i) remove settings from the inside dining area, including the place settings, wiping down tables, flipping chairs onto tables, and spot sweeping;

(j) take out the trash from the server station and expo stations;

(k) wipe down server stations;

(l) wipe out server sinks;

(m)   return computer on outside patio in to the building;

(n) bus the outside bar area and remove any leftover drinks;

(o) break down tables, stack the tables, and bring bar stools to the inside;

(p) roll up mats;

(q) spot sweep the Restaurant;

(r) roll all remaining silverware;

(s) polish all remaining glass wear; and,

(t) break down window bus station, including switch from window to dish
    pit (take dirty glass racks to dish), make space at the dishwasher, take
    empty glass racks to the dish pit to help out the dish washer, sanitize the
    bus cart, sanitize the glass rack shelves, wipe down walls and the dish
    window, take out linens, take out trash, empty the splash bucket, and
    sweep and mop the bus station.

41.

As a "closer," Plaintiff started her shift between approximately 4:30 PM and
6:00 PM, depending on the server's position, and worked until the Restaurant
closed.  The Restaurant closed once dinner service ended, all side work (for all
servers) was completed, and the nightly tips accounted for and distributed to the
Plaintiff and other tipped employees. This process of closing the Restaurant took
approximately one-and-a-half (1 ½) to two (2) hours to complete after dinner
service ended at 10:00 or 11:00 PM (depending upon the day of the week).

42.

Thus, when Plaintiff worked as a closer, she performed non-tipped side work
for one and one-half (1 ½) to two (2) hours in a seven (7) to eight (8) hour shift.

15

43.

The amount of and list of side work tasks depended, in part, upon the job and station a server was assigned.

44.

The total amount of side work would typically be between at least one and one-half (1 ½) hour and two-and-a-half (2 ½) hours per shift, if not longer.

45.

Much of the assigned side work occurred before and after service and was not performed incidental to the Plaintiff's service work.

46.

The total amount of time spent on side work typically exceeded twenty (20) percent of the total shift.

<u>Sub-Part 3: Tip Pool Violations.</u>

47.

Chuck's, LLC had a tip pool to which servers would contribute a percentage of gross sales, "hot" sales, bar sales less wine bottles, and sushi sales.

48.

Chuck's, LLC, uses a point-of-sale system, FOCUS (hereinafter "FOCUS"), for recording sales, tips, taxes, and other data from financial transactions.

49.

Chuck's, LLC and Henderson provided training to Plaintiff in or about April 24, 2019, through May 2, 2019, prior to her work as a server at the Restaurant.

50.

Chuck's, LLC, and Henderson provided Plaintiff with training material, attached hereto as Exhibit "A." The provided training material does **not** refer to, state, or explain the tip pool percentages or allocations.

51.

Chuck's, LLC, and Henderson did not provide any written explanation of the Restaurant's tip pool percentages or allocations to the Plaintiff.

52.

Chuck's, LLC, and Henderson did not orally state, explain, or represent to the Plaintiff the Restaurant's tip pool percentages or allocations.

53.

Chuck's, LLC, and Henderson did allow Plaintiff, or other servers or employees, to use a cell phone during their work hours, thereby precluding Plaintiff from recording the tip pool percentages or amounts.

54.

Chuck's, LLC required servers, including Plaintiff, to tip the host 1% of gross sales.

17

55.

At some point in or about late 2020 to January 2021, Chuck's, LLC, determined that its FOCUS system calculated 1 % of Plaintiff's gross sales, which included and regularly over-collected 1% of bar and sushi sales for inclusion in the tip pool provided to hosts.

56.

Chuck's, LLC required servers, including Plaintiff, to tip the food runners 1.5 % of hot sales, or the gross sale amount of food items ordered from the menu.

57.

At some point on or about February 2, 2021, Chuck's, LLC, informed Plaintiff that its FOCUS system calculated 1.5 % of Plaintiff's gross sales, which included and regularly over-collected 0.5% of hot sales, or the gross sale amount of food items ordered from the menu for inclusion in the tip pool provided to food runners.

58.

On or about February 2, 2021, Henderson asked Chuck's, LLC's servers, including Plaintiff, to a private, one-on-one meeting with Henderson, in his office, regarding Chuck's, LLC's tip pool revisions for host tip pools contributed to by servers and food-runner tip pools contributed to by servers.

59.

At this meeting with Henderson and Plaintiff on or about February 2, 2021, Henderson stated to Plaintiff that (paraphrasing the conversation), "I am the first one to admit when we made a mistake and that Emma was correct, we were tipping out 1.5% to hostesses."

60.

At this meeting with Henderson and Plaintiff on or about February 2, 2021, Henderson reviewed Plaintiff's gross totals, up to date, and then showed Plaintiff the difference between host totals versus host kitchen sales. Plaintiff noticed a stack of letters printed near the computer which appeared to be addressed to individual servers. The letters are similar to the February 2, 2021, letter, "Re: Server tips for the host and food-runner departments" provided to Plaintiff's counsel in or about early 2021[1], a copy of which is attached hereto as Exhibit "B." Plaintiff inquired to Henderson as to whether one of the letters was for her and Henderson replied "don't worry about it." Chuck's, LLC and Henderson did not provide Plaintiff with a copy of the February 2, 2021, letter.

*(Continued On the Next Page)*

---

[1] Provided as part of litigation during a settled lawsuit against the same Defendants in *Guest, et al v. Chuck's Fish Athens, LLC, et al* (N. Dist. Of Ga. 3:20-cv-108-CAR).

61.

Chuck's, LLC and Henderson never provided an accounting of the amount of gross sales or monies removed from host tip pool and food runner tip pool to which Plaintiff had participated.

62.

Sometime in or about January 2021, Chuck's ceased to collect a percentage of gross sales for inclusion of a server's tip pool to hosts.

63.

Chuck's, LLC required servers, including Plaintiff, to tip the busser 1% of gross sales.

64.

Chuck's, LLC, rarely employed bussers for the actionable period.

65.

Chuck's, LLC required servers, including Plaintiff, to contribute 1 % of gross sales to a tip pool for bussers, despite rarely employing bussers.

66.

Chuck's, LLC, FOCUS derived daily check out report records that monies were taken out each shift for a busser.

67.

No bussers were employed by Chuck's, LLC, in 2021.

68.

Chuck's, LLC required servers, including Plaintiff, to tip the bartender 7.5%

of all bar sales, i.e., alcohol, served by the server, not including the gross retail

price of wine bottles sold by the server.

69.

Sometime after January 2021, Chuck's, LLC, revised the servers' tip pool

contributions to (a) 7% of sushi sales, (b) 7% of beer, wine glass, and liquor sales,

and, (c) 1% of kitchen sales.

### Sub-Part 4: Sushi Manager Tip Pool Violations.

70.

Chuck's, LLC required servers, including Plaintiff, to tip the sushi bar

workers, including the head sushi chef Vu Trahn (hereinafter "Chef Trahn"), 7.5%

of sushi sales, later amended to 7% of sushi sales. Chef Tranh was the manager

and/or supervisor for the sushi station.

71.

Chuck's, LLC required servers, including Plaintiff, to tip the sushi bar

workers 7.5% of sushi sales. Of the 7.5% of gross sushi sales, 60% went to the

sushi runners, i.e., employees who delivered sushi dishes from the sushi bar to the

customers, and 40% went to the sushi chef, generally Chef Trahn, a salaried

manager.

72.

Sometime in the Fall of 2020, Chuck's, LLC and Henderson changed the Restaurant's tip pool policy to limit the amount of monies Plaintiff provided to the sushi bar workers, including Chef Trahn, to a maximum of $25.00 per shift per server.

73.

Chuck's, LLC, employs a sushi chef, a salaried position from approximately April 2019 through the Fall of 2020, to oversee the preparation of sushi dishes. The sushi chef regularly participated in the tip pool servers contributed to sushi workers.

74.

Chuck's, LLC, and Henderson provided a document with a list of specials and managers to Plaintiff and other servers at the nightly "line up" prior to opening the Restaurant. From approximately May 2019 through the Fall of 2020, the document provided nightly listed Chef Trahn as "Sushi Manager", but after the Fall of 2020, the document provided no longer listed Chef Trahn as "Sushi Manager."

*(Continued On the Next Page)*

75.

Chuck's, LLC, employs a sushi roller, to help in food prep and the preparation of sushi dishes. The sushi roller regularly participated in the tip pool servers contributed to sushi workers.

76.

Chuck's, LLC, employs a sushi runner. A sushi runner works the sushi bar, or area around the open-air kitchen in which the sushi workers prepare sushi.

77.

The sushi station is separate from the main kitchen in Chuck's, LLC.

78.

Chuck's, LLC's sushi runner waits on customers at the sushi bar, helps to put prepared sushi on plates for customers, and runs sushi orders to customers seated in the sushi bar as well as in the main floor.

79.

Plaintiff worked as a sushi runner for one shift.

80.

Sushi chefs at Chuck's, LLC do not regularly engage with customers at the Restaurant. To the extent sushi chefs at Chuck's, LLC engage with customers, it is incidental.

81.

Sushi chefs at Chuck's, LLC do not regularly greet customers at the Restaurant.

82.

Sushi chefs at Chuck's, LLC do not regularly take orders for customer's food directly from the customer at the Restaurant.

83.

Sushi chefs at Chuck's, LLC, do not input customers seated at the sushi station in to the FOCUS system. Servers working the sushi station, i.e., the sushi runner, would input customers seated at the sushi station's orders in to the FOCUS system.

84.

Sushi chefs at Chuck's, LLC do not regularly deliver food or beverages to customers at the Restaurant.

85.

Sushi chefs at Chuck's, LLC are employed to primarily prepare sushi dishes for customers at the Restaurant.

86.

Chef Trahn was paid a salary in his position as Sushi Chef from approximately May 1, 2019 through approximately October 2020.

87.

Chef Trahn was shifted from a salaried position to an hourly position after Chuck's, LLC and Henderson were served with a settled lawsuit alleging FLSA violations, *Guest, et al v. Chuck's Fish Athens, LLC, et al* (N. Dist. Of Ga. 3:20-cv-108-CAR).

88.

Upon hiring and training, Henderson informed Plaintiff that servers contributed to a tip pool but Henderson and Chuck's, LLC, never informed Plaintiff of the percentages of tip pools to which Plaintiff contributed.

89.

Chuck's, LLC used FOCUS to track gross sales, hours, tips, and tip allocations.

90.

At the end of each shift Chuck's, LLC provided the Plaintiff with a daily FOCUS report showing her gross sales, cash tips, credit card tips, and tip pool contributions. Plaintiff would attach her credit card receipts to the back of her individual daily POS report. Plaintiff would then give the daily POS report and credit card receipts to management of Chuck's, LLC. Chuck's LLC did not provide a copy of the daily POS report to the Plaintiff.

91.

The total daily tip out – which was based upon *gross sales* - to the tip pool by servers typically exceeded 15% of actual tips received, and thus the tip pool was *per se* not voluntary.

Sub-Part 5: Credit Card Percentage Violations

92.

Chuck's, LLC retained 33% of Plaintiff (ad other server's) total credit card tips daily.

93.

Chuck's, LLC, withheld 3% of total credit card tips to reimburse Chuck's, LLC, for the cost of its credit card processing fee.

94.

Chuck's, LLC's FOCUS system recorded customer's credit card sales' transactions by different credit card providers, such as American Express, Visa, and Mastercard.

95.

Chuck's, LLC, actual interchange fees with its credit card processor are less than 3%.

*(Continued On the Next Page)*

96.

Chuck's, LLC, required Plaintiff to pay credit card fees in excess of

Chuck's, LLC's actual credit card transaction costs.

Sub-Part 6: Overtime Violations

97.

Chuck's, LLC paid Plaintiff at the rate of $2.13 per hour as a server in the

Fall of 2019 and September 2020 and $5.00 an hour as a server in the fall of 2020.

98.

The University of Georgia (hereinafter "UGA") played football games on

various Saturdays in the Fall of 2019 and 2020 (hereinafter "UGA Game Days").

99.

Chuck's, LLC's required Plaintiff to report to work on UGA Game Days at

approximately 11:00 AM.

100.

Plaintiff would work over time on work weeks with UGA Game Days in the

Fall of 2019 and 2020 as well as intermittently in other work weeks during the

actionable period.

101.

Chuck's, LLC, should have paid Plaintiff overtime for work done at the rate

of $2.13 with an overtime rate of $5.76, calculated by taking the minimum wage

27

($7.25) times 1.5 for Plaintiff's overtime hours, for a rate of $10.875 for overtime hours, minus the tip credit of $5.12, for a minimum cash overtime rate of $5.755, rounded to $5.76.

102.

Chuck's, LLC paid Plaintiff for overtime hours done at the cash rate of $2.13 at the rate of $3.195 for Plaintiff's overtime hours from April 2019 through approximately September 2020.

103.

Chuck's, LLC, should have paid Plaintiff overtime for work done at the rate of $5.00 with an overtime rate of $8.63, calculated by taking the minimum wage ($7.25) times 1.5 for Plaintiff's overtime hours, for a rate of $10.875 for overtime hours, minus the tip credit of $2.25, for a minimum cash overtime rate of $8.625, rounded to $8.63.

104.

Chuck's, LLC paid Plaintiff for overtime hours done at the cash rate of $5.00 at the rate of $7.50 for Plaintiff's overtime hours from October 2020 through the end of her employment.

*(Continued On the Next Page)*

## Sub-Part 7: Inflated Tip Income as Fraud

### 105.

Chuck's, LLC, reported Plaintiff's income (wages and tips) to the Internal Revenue Service (hereinafter "IRS") and Georgia Department of Revenue (hereinafter "GDOR").

### 106.

Chuck's, LLC, reported Plaintiff's income (wages and tips) to the IRS and GDOR through its payroll service provider as well as on her IRS Form W-2.

### 107.

Cash tips are rare, and most tips are paid by customers via their debit or credit cards.  Typically, Plaintiff did not receive more than $20.00 in cash tips during the course of a week and generally no more than one or two times a week would she receive a cash tip.

### 108.

Henderson regularly entered an amount which Henderson reported as cash tips for each server.  (Hereinafter these falsified cash tips will be referred to as "Phantom Tip Income").

### 109.

Henderson met with Plaintiff and other servers regarding front-of-the-house tip issues at some point in late 2019. At this meeting, Henderson explained his

process for calculating the Phantom Tip Income as: (1) determining the Restaurant's gross sales for a week; (2) multiplying this weekly gross sales amount by approximately 15% to 16%; and finally (3) dividing this sum by the number of servers employed in the particular workweek.  This final number – each server's Phantom Tip Income - was then included on each server's compensation for the workweek.

110.

Chuck's, LLC reported the Phantom Tip Income, along with debit/credit card tips (which are captured by the POS), to its payroll processing company each pay period, and in turn reported the aggregate wages and tips, including Phantom Tip Income and income not received as it had been provided to other tip pool recipients and kitchen staff.

111.

As a result of the Defendants' fraudulent reporting of Phantom Tip Income and other monies not received as it had been provided to other tip pool participants, the servers, such as Plaintiff, paid an excessive amount of FICA, state and federal income taxes on income the servers never received.

*(Continued On the Next Page)*

30

112.

On information and belief, the Defendants deducted the Plaintiff's Phantom Tip Income as a business expense, as a part of their payroll cost deduction, thereby shifting to Plaintiff a portion of the Defendant's tax liability.

Sub-Part 8: Intentionally Filing A Willfully Fraudulent Information Return

113.

Chuck's, LLC, filed Form W-2 with respect to Plaintiff with the Internal Revenue Service for tax year 2019.

114.

Chuck's, LLC, filed Form W-2 with respect to Plaintiff with the Internal Revenue Service for tax year 2020.

115.

For tax years 2019 and 2020, Chuck's, LLC, willfully inflated Plaintiff's earnings by including Phantom Tip Income in the wages, tips, and other income.

116.

For tax years 2019 and 2020, Chuck's, LLC, willfully inflated Plaintiff's earnings by including Plaintiff's gross tip income in the wages, tips, and other income without deducting the Plaintiff's tip pool contributions from her gross income, despite having knowledge and total control of Plaintiff's tip pool contributions.

117.

For the tax years 2019 and 2020, Chuck's, LLC willfully miscalculated Plaintiff's earnings to include Phantom Tip Income and /or Plaintiff's gross income without deducting the Plaintiff's tip pool contributions for the purpose(s) of its own enrichment, to avoid payment of taxes, and to maximize Chuck's deductions.

## COUNT I:  FAILURE TO PAY MINIMUM WAGE – EXCESSIVE & INAPPROPRIATE "SIDE-WORK"

118.

Plaintiff restates and reallege paragraphs one (1) through one hundred seventeen (117), *supra*.

119.

Defendants' willful failure to pay Plaintiff the full minimum wage for inappropriate side-work and for side-work exceeding twenty percent (20%) of each shift constitutes a violation of the §6 of the Act, 29 U.S.C. §206.

120.

Defendants owe Plaintiff back wages, for both regular time and any overtime, in an amount to be determined at trial for all improperly paid side-work pursuant to 29 U.S.C. §206 and §216.

121.

Additionally, Defendants owe Plaintiff liquidated damages in an equal

amount for all improperly paid side-work pursuant to 29 U.S.C. §206 and §216.

## COUNT II:  FAILURE TO PAY MINIMUM WAGE – TIP POOL VIOLATIONS

122.

Plaintiff restates and realleges paragraphs one (1) through  one hundred-

seventeen (117) *supra*.

123.

Defendants' willful violations of the U.S. Department of Labor's regulations

governing tip pools, i.e., (a) allowing managers and/or back-of-house staff to

participate, (2) failing to inform the Plaintiff of the terms of the tip pool, and (3)

failing to distribute all of the tip pool to customarily tipped employees (and thus

illegally retaining a portion of the tip pool for management), constitutes a violation

of the §6 of the Act, 29 U.S.C. §206.

124.

Defendants owe Plaintiff back wages in an amount to be determined at trial

for (1) all illegally retained tips, (2) all tips distributed to back-of-house employees

and managerial employees, (3) all retained credit card processing fees retained by

Defendant above and over Defendants' credit card processing fees, and (4) for the

full, non-tipped minimum wage for all hours worked as servers pursuant to 29

U.S.C. §206 and §216.

125.

Additionally, Defendants owe Plaintiff liquidated damages in an equal

amount for all illegally retained tips, all tips paid to back-of-house and managerial

and/or supervisor employees, all retained credit card processing fees retained by

Defendant above and over Defendants' credit card processing fees, and for all

unpaid full (non-tip credit) minimum wages pursuant to 29 U.S.C. §206 and §216.

<u>COUNT III:  FAILURE TO PAY OVERTIME WAGES –</u>

126.

Plaintiff restates and realleges paragraphs one (1) through one hundred-seventeen

(117) *supra*.

127.

For the workweeks between April 2019, and July 2021, Defendants violated

the overtime provisions of the Fair Labor Standard Act, 29 U.S.C. §207, by failing

to pay Plaintiff one and one-half (1½) times her "regular rate" of pay for all hours

worked in excess of forty (40).

128.

Defendants owe Plaintiff Cox in an amount to be determined at trial in unpaid overtime wages for the workweeks between April 2019 and July 2021. 29 U.S.C. §207 and §216.

129.

Additionally, Defendants owe Plaintiff liquidated damages for failing to pay overtime wages for the workweeks between April 2019 and July 2021.  29 U.S.C. §207 and §216.

## COUNT IV: PHANTOM CASH TIPS AS FRAUD

130.

Plaintiff restates and realleges paragraphs one (1) through one hundred-seventeen (117), *supra*.

131.

Defendants intentionally falsified the amount of cash tips received by Plaintiff.

132.

Defendants reported these intentionally false receipts to various governmental entities, including the Social Security Administration, the Georgia Department of Labor, the Georgia Department of Revenue, and the Internal Revenue Service.

133.

Plaintiff had no choice but to act upon these intentionally false receipts in that Plaintiff, and all similarly situated employees, paid excessive FICA, state and federal income taxes based upon the inflated income reported by the Defendants.

134.

Defendants' reporting of Plaintiff's wages and tips, including the falsified cash tip amount, was a material fact which determined the total amount of FICA and income taxes paid by the Plaintiff, and all similarly situated employees.

135.

As a result of Defendants' falsification of cash tips received by servers, the Plaintiff has been and will continue to be damaged.


COUNT V: PUNITIVE DAMAGES

136.

Plaintiff restates and realleges paragraphs one (1) through one hundred-seventeen (117), *supra*.

137.

The acts of Defendants Chuck's, LLC, and Henderson were intentional and humiliating.  Defendant Chuck's, LLC, and Defendant Henderson's deliberate falsification of employees' tip records further evince a conscious disregard for the

circumstances and rights of others, and a specific intent to cause harm.  Plaintiff is accordingly entitled to recover from Defendants, in addition to their compensatory damages, an award of punitive damages under the laws of the State of Georgia, including but not limited to O.C.G.A. § 51-12-5.1, to punish Defendants, or to deter them from repeating such wrongful acts.

## COUNT VI: CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS (26 U.S.C. § 7434)

138.

Plaintiff restates and realleges paragraphs one (1) one hundred -seventeen (117), *supra.*

139.

At all times material, Plaintiff has been Chuck's, LLC's employee.

140.

In 2019 and 2020, Chuck's, LLC has provided the Internal Revenue Service with a W-2, Employee Wage and Tax Statement.

141.

At all times material, Chuck's, LLC, has intentionally, willfully, and fraudulently overreported Plaintiff's wages and tip income to the Internal Revenue Service.

37

142.

In 2019, Chuck's, LLC, filed Form W-2 with the Internal Revenue Service that included Phantom Tip Income Plaintiff did not receive and tip income provided to a tip pool that Plaintiff did not receive.

143.

In 2020, Chuck's, LLC, filed Form W-2 with the Internal Revenue Service that included Phantom Tip Income Plaintiff did not receive and tip income provided to a tip pool that Plaintiff did not receive.

144.

Chuck, LLC's inclusion of Phantom Tip Income and tip income provided to a tip pool that Plaintiff did not receive in 2019 and 2020 was false and fraudulent.

145.

Chuck, LLC's inclusion of Phantom Tip Income and tip income provided to a tip pool that Plaintiff did not receive in 2019 and 2020 was for its own enrichment.

146.

As a consequence of Chuck's, LLC's willful filing of fraudulent tax information returns, Plaintiff is entitled to recover damages from Chuck's, LLC up to and including any actual damages sustained, or in any event not less than

$5,000.00 per fraudulent filing, as well as costs of litigation and reasonable attorney's fees under 26 U.S.C. § 7434.

## COUNT VII: ATTORNEY'S FEES

147.

Plaintiff restates and realleges paragraphs one (1) one hundred-seventeen (117), *supra.*

148.

Defendants have acted in bad faith, been stubbornly litigious, and/or caused Plaintiffs unnecessary trouble and expense in litigating this case, and Plaintiffs are thus entitled to recovery of their expenses of this litigation, including attorneys' fees, under Georgia law, including but not limited to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

149.

Based upon the forgoing paragraphs, Plaintiff respectfully ask this Court to find and order the following:

A.  That the Court grant Plaintiff a trial by jury on all issues of fact;

B.  That the Court find and declare that Defendant Mitchell Dane Henderson acted directly in the interest of Defendant Chuck's Fish Athens, LLC

39

relation of the Plaintiff, and that as such Defendant Mitchell Dane

Henderson was an "employer" of Plaintiff within the meaning of §3(d) of

the Act, 29 U.S.C. §203(d);

C.  That the Court find and declare that Defendant Chuck's Fish Athens, LLC,

and Defendant Mitchell Dane Henderson, collectively, have violated the Fair

Labor Standards Act, 29 U.S.C. §201 *et. seq*., have failed to properly pay the

Plaintiff her minimum wages as required, and to have acted "willfully" thus

entitling the Plaintiff to liquidated damages under the Act;

D.  That Defendant Chuck's Fish Athens, LLC and Defendant Mitchell Dane

Henderson be ordered to pay Plaintiff back wages equaling the minimum

required under §6 of the Act, 29 U.S.C. §206, for all applicable workweeks;

E.  That Defendant Chuck's Fish Athens, LLC and Defendant Mitchell Dane

Henderson be ordered to pay Plaintiff overtime wages, at a rate equal to one

and one-half her "regular rate" of pay, for all workweeks in which Plaintiff

worked more than forty (40) hours in the actionable period.

F.  That That Defendant Chuck's Fish Athens, LLC, and Defendant Mitchell

Dane Henderson be ordered to pay Plaintiff liquidated damages under the

Act;

G. That That Defendant Chuck's Fish Athens, LLC, and Defendant Mitchell Dane Henderson be ordered to pay Plaintiff's reasonable attorneys' fees, and costs of this action pursuant to 29 U.S.C. §216; and,

H. That Defendant Chuck's Fish Athens, LLC and Defendant Mitchell Dane Henderson be ordered to pay Plaintiff the appropriate damages for fraud; and,

I. That Defendant Chuck's Fish Athens, LLC and Defendant Mitchell Dane Henderson be ordered to pay Plaintiff punitive damages based on Defendants' willful, malicious, intentional, and deliberate acts; and,

J. That Plaintiff be awarded no less than $5,000.00 for each fraudulent tax information return filed by Defendant Chuck's Fish Athens, LLC, in tax years 2019 and 2020 with respect to Plaintiff as well as her reasonable attorney's fees and costs;

K. Award Plaintiffs their reasonable attorney's fees and expenses of litigation on Plaintiffs' state law claims pursuant to O.C.G.A. § 13-6-11; and,

L. For such other and further relief as the Court finds just and appropriate. Respectfully submitted this third (3rd) day of September, 2021.

　　　　　　　　　　　　　　　　　 */s/ Peter H. Steckel*
　　　　　　　　　　　　　　　　　 Peter H. Steckel
　　　　　　　　　　　　　　　　　 Georgia Bar Number 491935
　　　　　　　　　　　　　　　　　 Counsel for Plaintiff

Steckel Law, L.L.C.
1120 Ivywood Drive

Athens, Georgia 30606
(404) 717-6220
Email: peter@SteckelWorkLaw.com